**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

────────────────────────────────

**ROMEL BALCHAN,**

                    **Plaintiff,**              **21-cv-10326 (JGK)**

        **- against -**                        **MEMORANDUM OPINION**
                                               **AND ORDER**
**NEW YORK CITY HOUSING AUTHORITY, ET**
**AL.,**

                    **Defendants.**

────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiff, Romel Balchan, brings this action against his employer, the New York City Housing Authority ("NYCHA"), and individual defendants, Ava-Gay Blagrove, Vincent Eweka, and Patrick O'Hagan. The plaintiff claims that he had medical conditions that rendered him disabled and that the defendants failed to accommodate the plaintiff's disabilities, discriminated against the plaintiff because of his disabilities, retaliated against the plaintiff when he engaged in protected activity, created a hostile work environment, and interfered with his right to family and medical leave. The plaintiff asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; the Rehabilitation Act, 29 U.S.C. §§ 791 et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 et seq.; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 et

1

seq.; and the Family Medical Leave Act ("FMLA"), 29 U.S.C.
§§ 2601 et seq. The defendants move for summary judgment
dismissing each of the plaintiff's claims. For the reasons
stated below, the defendants' motion is **granted in part** and
**denied in part.**

## I.

Unless otherwise noted, the following facts are taken from
the parties' Local Rule 56.1 Statements and supporting papers
and are undisputed.

## A.

NYCHA, a public benefit corporation that provides
affordable housing for low-income New York City residents,
manages and maintains 325 housing developments across the city.
Defs.' Statement of Undisputed Facts ("Defs. Rule 56.1
Statement") ¶ 1, ECF No. 48. NYCHA created the Environmental
Health and Safety ("EHS") Department in 2019. Id. ¶¶ 19-20.

Since August 2019, the plaintiff has been employed by NYCHA
as a Specialist in the Lead Oversight Team ("LOT") in the EHS
Department. See id. ¶¶ 2, 43. The plaintiff's Civil Service
title is Associate Public Health Sanitarian, Level II. Id. ¶ 3.
The plaintiff reported to Eweka, who was employed as the LOT
Administrator from July 2019 until May 2022. Id. ¶¶ 4-5. Eweka,
in turn, reported to Blagrove, who was the Deputy Director of

the Environmental Hazards Unit in the EHS Department from August
2019 to March 2021. Id. ¶¶ 5-6. Blagrove was promoted to
Director in March 2021. Id. ¶ 6. O'Hagan has been NYCHA's
Environmental Health and Safety Officer since April 2019, when
he was tasked with building the brand-new EHS Department. Id.
¶¶ 7, 21.

The LOT is responsible for conducting oversight of lead-
based paint activities throughout NYCHA's buildings to ensure
compliance with applicable regulations. Id. ¶ 25; Ex. 11 to
Decl. of Hanh H. Le ("Le Decl.") at -1570, ECF No. 47-11. The
LOT job description stated that a "LOT Specialist under general
supervision, performs inspections, sampling events and
surveillance of NYCHA personnel and vendors engaged in lead
investigation, application of interim controls and abatement
activities throughout NYCHA's properties to ensure compliance
with all applicable regulations." Defs. Rule 56.1 Statement
¶ 29. As the job description outlined, a LOT Specialist's
responsibilities included the following:

- Conduct field oversight of NYCHA personnel and
  vendors conducting the following lead-based paint
  activities: XRF investigations, visual
  assessments, interim controls, abatement and lead
  safe work practices to evaluate the efficacy and
  compliance with federal, state, and local
  regulations.
- Prepare detailed reports outlining the findings of
  the field oversight which highlight the extent to

3

> which lead-based paint activities are being
> conducted in compliance with applicable and
> industry best practices, flagging potential gaps or
> risks for supervision. . . .

Id. ¶ 30. There were five LOT Specialists: the plaintiff, Samuel
Awelewa, John Ospina, Akinola Idowu, and Chibuzor Nwobodo. Id.
¶ 37. All LOT Specialists reported to Eweka, the LOT
Administrator. Id.

For his first six weeks on the job, beginning in August
2019, the plaintiff reported that he worked in the office every
day. Id. ¶ 44. The plaintiff began field assignments thereafter.
Id. The parties disagree about the exact proportion of time the
plaintiff spent working in the field, at NYCHA buildings, versus
in the office between September 2019 and March 2020. According
to the defendants, during that time period, the plaintiff was,
on average, in the field 90% of the time. Id. ¶¶ 47–50. The
plaintiff disputes that figure, arguing that the number was
significantly lower. See Pltf.'s Counterstatement to Defs.' Rule
56.1 Statement of Material Facts ("Pltf. Rule 56.1 Statement")
¶ 47, ECF No. 52.

In March 2020, the COVID-19 pandemic hit, and the LOT
suspended lead oversight activities. Defs. Rule 56.1 Statement
¶ 51. The plaintiff, who suffers from coronary artery disease,
status post myocardial infarction, congestive heart failure,
asthma, prediabetes, and anxiety, submitted to Eweka and

4

Blagrove a doctor's note recommending that the plaintiff work remotely to avoid exposure to COVID-19. Id. ¶ 56; Pltf. Rule 56.1 Statement ¶ 200. The plaintiff's accommodation request was granted, and between April 2020 and July 2021, the plaintiff worked from home full-time. See Defs. Rule 56.1 Statement ¶¶ 57, 127-28; Pltf. Rule 56.1 Statement ¶ 221. During this period, the plaintiff assisted Eweka with administrative tasks, vendor contract management, and special projects. See Defs. Rule 56.1 Statement ¶¶ 62-69; Pltf. Rule 56.1 Statement ¶¶ 222-24. In August 2020, the other LOT Specialists resumed some lead oversight activities in the field, while the plaintiff continued to work remotely. Defs. Rule 56.1 Statement ¶¶ 53, 128.

In April 2021, NYCHA informed its employees that they were expected to return to the office with occupancy limited to 25%. Id. ¶ 73. Employees who were unable to return to the office due to medical conditions were instructed to submit a reasonable accommodation request to the Human Resources ("HR") Department. Id. ¶¶ 74-75. In May 2021, the plaintiff submitted a reasonable accommodation request to HR, seeking to continue working remotely full-time because of his disabilities. Id. ¶ 85. While HR's review of the plaintiff's request was pending, the plaintiff continued to work from home. See id. ¶ 127. In reviewing the plaintiff's request, HR consulted with Blagrove to

understand the plaintiff's job responsibilities. See id. ¶¶ 90-101.

On July 8, 2021, HR issued a decision denying the plaintiff's request to work remotely full-time. See id. ¶¶ 121. HR informed the plaintiff that, as an alternative accommodation, the plaintiff would be permitted to work from home on the day(s) he would otherwise be expected to report to the office (and not to the field). See id. HR further explained: "Please note, as an Associate Public Health Sanitarian, you are required to conduct Lead Compliance Field Oversight Inspections, as required by your role. If you are unable to perform these tasks on your assigned days in the field, you can utilize leave time, as approved." Ex. 44 to Le Decl., ECF No. 47-44.

Upon receiving HR's decision, Blagrove directed Eweka to resume scheduling the plaintiff for field oversight inspections. Defs. Rule 56.1 Statement ¶ 129. Eweka began assigning the plaintiff to perform field inspections beginning on July 13, 2021. Id. ¶ 143. Between July 13, 2021, and September 28, 2021, the plaintiff took paid leave on days he was scheduled for field inspections and worked remotely on the days he would otherwise be expected to report to the office. Id. ¶ 145. According to the defendants, LOT Specialists were generally assigned to the field four days a week and to the office one day a week. Id. ¶ 144.

The plaintiff, however, disputes this assertion, claiming instead that there was no fixed ratio of field days to office days. See Pltf. Rule 56.1 Statement ¶¶ 144, 270.

On July 12, 2021, the plaintiff appealed HR's decision. The plaintiff stated that his "duties [were] shifted" during the pandemic, listed his "reassignment duties," and reiterated his request to continue to work remotely full-time "in [his] current role." Defs. Rule 56.1 Statement ¶¶ 136-37. By letter dated August 23, 2021, NYCHA denied the plaintiff's appeal. Id. ¶ 139.

The plaintiff eventually exhausted his paid leave balance, and on September 13, 2021, the plaintiff submitted a request for FMLA leave to HR. Id. ¶ 158; see also Pltf. Rule 56.1 Statement ¶¶ 295-96. On September 23, Eweka attempted to assign work to the plaintiff. Pltf. Rule 56.1 Statement ¶ 297. When the plaintiff escalated the situation to HR, HR informed the plaintiff that it did not have his FMLA paperwork and requested that the plaintiff resubmit his FMLA leave request. Id. ¶ 298. In the meantime, on the advice of his union representative, the plaintiff continued to do office-based work remotely on the days Eweka requested. Id. ¶ 299. On September 27, 2021, Eweka informed the plaintiff that HR had approved his FMLA leave. Id. ¶ 301. The plaintiff was on FMLA leave between September 28,

2021, and December 27, 2021. <u>See</u> Ex. 59 to Le Decl., ECF No. 47-59.

After the plaintiff exhausted his FMLA leave, the plaintiff took illness leave as permitted under NYCHA's policies. <u>Id.</u> Beginning in February 2022, upon the birth of his child, the plaintiff, who was the primary caregiver for his child, went on childcare leave. <u>See</u> Defs. Rule 56.1 Statement ¶¶ 161–62. The plaintiff returned to work in January 2024. <u>Id.</u> ¶ 163.

**B.**

The plaintiff alleges that the defendants retaliated against him in several respects for filing a reasonable accommodation request.

The plaintiff claims that, after HR issued its decision on the plaintiff's reasonable accommodation request on July 8, 2021, Blagrove directed Eweka to schedule the plaintiff for field duties immediately, four days per week. <u>See id.</u> ¶ 173. Eweka notified the plaintiff of this change on the phone, but Eweka allegedly refused to put the new directive in writing when asked to do so by the plaintiff. <u>Id.</u>; <u>see also</u> Compl. ¶ 11, ECF No. 1.

The plaintiff also alleges that, on July 16, 2021, he was forced to take leave time because he was assigned to the field that day, even though he had expected to be assigned to do

8

office-based work that day. Compl. ¶ 14; see also Defs. Rule
56.1 Statement ¶ 176. It is undisputed that all LOT Specialists
were assigned field duties that day. Defs. Rule 56.1 Statement
¶ 177.

Furthermore, the plaintiff claims that Eweka refused to
provide him with a weekly schedule in advance, which allegedly
made it more difficult for the plaintiff to plan for the week
and to submit his leave requests for the days he would otherwise
be in the field. See id. ¶¶ 178-82; Ex. 16 to Le Decl. at 156-
62, ECF No. 47-16.[1] Without an advance weekly schedule, the
plaintiff "had to log in each day in the morning to see if [he]
was assigned to the field or to the office." Ex. 16 to Le Decl.
at 156-57.

The plaintiff additionally complains that, when Eweka went
on vacation for about a week in July 2021, the plaintiff was
intentionally not selected to provide coverage for Eweka, even
though the plaintiff had the most experience among the LOT
Specialists in providing administrative support to the LOT.
Defs. Rule 56.1 Statement ¶ 185. The plaintiff claims that he
had usually covered for Eweka in the past. Id. ¶ 186. However,

---

[1] The parties disagree on exactly how long the plaintiff was not given an
advance weekly schedule. The defendants assert that the plaintiff lacked an
advance schedule for only two weeks in July 2021, while the plaintiff claims
that he did not receive a schedule on at least three occasions in August and
September 2021. See Defs. Rule 56.1 Statement ¶ 183; Pltf. Rule 56.1
Statement ¶¶ 178, 183.

on this occasion, another LOT Specialist, Awelewa, was pulled from the field to cover Eweka's duties while Eweka was on vacation. Id. ¶ 185. The defendants, for their part, assert that EHS leadership had discussions regarding professional advancement and growth opportunities for Awelewa as early as May 2021, and that the decision to have Awelewa provide coverage for Eweka in July 2021 was consistent with these discussions. See id. ¶¶ 188-89. In March 2022, Awelewa was promoted to LOT Field Supervisor, a newly created position designed to support the work of the LOT Administrator. Id. ¶¶ 191; see also Ex. 67 to Le Decl., ECF No. 47-67.[2]

### C.

The plaintiff alleges that NYCHA mishandled his FMLA request. Compl. ¶¶ 21-23. In late September 2021, the plaintiff called the United States Department of Labor ("DOL") regarding the handling of his FMLA request. Pltf. Rule 56.1 Statement ¶ 303. In early October 2021, the DOL opened an investigation into NYCHA's FMLA policies based on the information that the plaintiff provided. Id. ¶ 305. The next month, the DOL completed its investigation and advised the plaintiff that NYCHA had

---

[2] Eweka retired from NYCHA in May 2022. See Decl. of Samuel Awelewa ("Awelewa Decl.") ¶ 12, ECF No. 58. Awelewa applied for and interviewed for the LOT Administrator vacancy, and he became the LOT Administrator in January 2023. Id. ¶¶ 13-14. The plaintiff did not apply for the vacancy. See Ex. 16 to Le Decl. at 191-95 (testifying that the plaintiff applied for two jobs between July 2021 and January 2024, but that none of these jobs was at NYCHA).

committed three FMLA violations against him. Id. ¶ 306. These
violations were: (1) failure to provide Eligibility Notice; (2)
failure to provide Rights & Responsibilities Notice; and (3)
failure to provide Designation Notice. Id. The defendants do not
appear to dispute that the FMLA notice-based violations revealed
by the DOL investigation occurred.

## II.

The standard for granting summary judgment is well
established. "The Court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986). "[T]he trial court's task at the
summary judgment motion stage of the litigation is carefully
limited to discerning whether there are any genuine issues of
material fact to be tried, not to deciding them. Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution." Gallo v. Prudential Residential
Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[3] The
moving party bears the initial burden of "informing the district
court of the basis for its motion" and identifying the matter

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal
alterations, citations, footnotes, and quotation marks in quoted text.

that "it believes demonstrate[s] the absence of a genuine issue
of material fact." Celotex, 477 U.S. at 323. The substantive law
governing the case will identify those facts that are material
and "[o]nly disputes over facts that might affect the outcome of
the suit under the governing law will properly preclude the
entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary
judgment is improper if there is any evidence in the record from
any source from which a reasonable inference could be drawn in
favor of the nonmoving party. See Chambers v. TRM Copy Ctrs.
Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets
its burden, the nonmoving party must produce evidence in the
record and "may not rely simply on conclusory statements or on
contentions that the affidavits supporting the motion are not
credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532
(2d Cir. 1993).

### III.

The defendants have moved for summary judgment, seeking to
dismiss all of the plaintiff's claims. The plaintiff asserts:

(1) claims against all of the defendants for discrimination in violation of the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL; (2) claims against all of the defendants for retaliation in violation of the same federal and state laws; (3) claims against all of the defendants for creating a hostile work environment in violation of the ADA and corresponding state laws; (4) claims against the individual defendants for aiding and abetting discriminatory acts in violation of the NYSHRL and the NYCHRL; and (5) a FMLA interference claim against all of the defendants.

## A. Individual Liability Under the ADA and the Rehabilitation Act

As a threshold matter, there is no individual liability for claims brought under the ADA or the Rehabilitation Act. See Spiegel v. Schulmann, 604 F.3d 72, 79–80 (2d Cir. 2010) (ADA); Goe v. Zucker, 43 F.4th 19, 35 (2d Cir. 2022) (Rehabilitation Act). The plaintiff agrees that the individual defendants are not liable under the ADA or the Rehabilitation Act. See Pltf. Opp. at 20–21, ECF No. 54. Therefore, to the extent that the Complaint can be read to assert ADA or Rehabilitation Act claims against the individual defendants, those claims are **dismissed.**

**B. Discrimination Claims**

The defendants first seek summary judgment dismissing the plaintiff's disability discrimination claims under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.

The ADA and the Rehabilitation Act make it unlawful for an employer to discriminate against an otherwise qualified individual on the basis of disability. See 42 U.S.C. § 12112(a); 29 U.S.C. § 794(a). The NYSHRL and the NYCHRL likewise prohibit discrimination against an employee because of the employee's disability. See N.Y. Exec. L. § 296(1)(a); N.Y. Admin. Code § 8-107(1)(a). Employment discrimination claims brought pursuant to the ADA are governed by the burden-shifting standard established for Title VII claims by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013).

Under the McDonnell Douglas burden-shifting framework, "a plaintiff must first establish a prima facie case of discrimination . . . , after which the burden of proof shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employer's conduct." Fox v. Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019). "If the employer successfully meets its burden, the plaintiff must then demonstrate that the employer's assigned reason was a pretext or

14

discriminatory in its application." Id. Disability

discrimination claims may be brought under a theory of failure

to provide reasonable accommodation ("failure to accommodate")

or of adverse employment action ("discriminatory treatment").

See McMillan, 711 F.3d at 125–26. In general, the same

substantive standards apply to claims asserted under the

Rehabilitation Act as to claims brought pursuant to the ADA. See

Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804

F.3d 178, 187 (2d Cir. 2015).

However, courts must analyze NYCHRL claims separately from

any federal and state law claims. See Mihalik v. Credit Agricole

Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). The

NYCHRL must be "construed liberally for the accomplishment of

the uniquely broad and remedial purposes thereof." Id. "This

task is not always uncomplicated, however," because there is "no

specific guidance concerning how the NYCHRL should be 'construed

liberally' and independently of state and federal law in its

particular applications." Chauca v. Abraham, 841 F.3d 86, 87–88

(2d Cir. 2016). Moreover, it is "unclear whether, and to what

extent, the McDonnell Douglas burden-shifting analysis has been

modified for NYCHRL claims." Mihalik, 715 F.3d at 110 n.8.

Regardless, "the NYCHRL simplified the discrimination inquiry:

the plaintiff need only show that [his] employer treated [him]

15

less well, at least in part for a discriminatory reason." Id.;
see also Dixon v. City of New York, No. 23-cv-8941, 2025 WL
50140, at *12 (S.D.N.Y. Jan. 7, 2025).

Prior to 2019, discrimination claims brought pursuant to
the NYSHRL were analyzed under the same standard as federal
discrimination claims. See, e.g., Kinneary v. City of New York,
601 F.3d 151, 158 (2d Cir. 2010). However, in 2019 the NYSHRL
was amended to "be construed liberally for the accomplishment of
the remedial purposes thereof, regardless of whether federal
civil rights laws, including those laws with provisions worded
comparably to the provisions of this article, have been so
construed." N.Y. Exec. L. § 300 (2023). This language largely
mirrors that of the NYCHRL. Mihalik, 715 F.3d at 109 (citing
N.Y.C. Admin. Code § 8-130).

New York courts have not yet analyzed how this amendment to
the NYSHRL alters the standard for liability under the NYSHRL,
see Dixon, 2025 WL 501410, at *12, but courts in this District
have interpreted the amendment "to render the standard for
claims [under the NYSHRL] closer to the standard of the NYCHRL."
Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14
(S.D.N.Y. 2021); see also Kaye v. N.Y.C. Health & Hosps. Corp.,
No. 18-cv-12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31,
2023).

The Court will therefore apply the more liberal NYCHRL standard to the plaintiff's NYSHRL claims for the purposes of this Memorandum Opinion and Order. See Mercado v. Mount Sinai Beth Israel, No. 21-cv-10467, 2023 WL 5975322, at *12 (S.D.N.Y. Sept. 14, 2023); see also Dixon, 2025 WL 501410, at *12.

### 1. Failure to Accommodate

### a. ADA and Rehabilitation Act

To state a prima facie failure-to-accommodate claim under the ADA, a plaintiff must demonstrate that "(1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006). The same prima facie standard applies to claims brought under the Rehabilitation Act. See Natofsky v. City of New York, 921 F.3d 337, 352 (2d Cir. 2019). With respect to failure-to-accommodate claims under the ADA and the Rehabilitation Act, "[t]he plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009).

17

The key issue on this motion is whether the plaintiff has established the third element of a prima facie claim for failure to accommodate: that the plaintiff could perform the essential functions of his job with a reasonable accommodation.[4] Resolving this issue requires determining what the essential functions of the plaintiff's job are. The defendants argue that in-person field inspections are an essential function of the plaintiff's position, and that the plaintiff cannot perform that function with the requested accommodation—working remotely full-time. The plaintiff, on the other hand, contends that his position is a supervisory one that does not require him to perform fieldwork.

The ADA does not define "essential functions," but EEOC regulations define the term as "the fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1). "Although a court will give considerable deference to an employer's determination as to what functions are essential, there are a number of relevant factors that may influence a court's ultimate conclusion as to a position's essential functions." McMillan, 711 F.3d at 126. Relevant factors to consider include "the employer's judgment, written job descriptions, the amount of time spent on the job

---

[4] There is no dispute that the plaintiff has satisfied the first, second, and fourth elements of a prima facie claim for failure to accommodate.

performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." See id. (citing Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997)). "[T]he question whether a task constitutes an essential function depends on the totality of the circumstances." Rodal v. Anesthesia Grp. of Onondaga, 369 F.3d 113, 120 (2d Cir. 2004).

There is no genuine dispute that fieldwork is an essential function of the plaintiff's job and that granting the accommodation requested by the plaintiff—the ability to work remotely full-time—would eliminate that essential function.

Undisputed evidence in the record establishes that fieldwork is an essential function of the LOT Specialist position. The LOT Specialist job description states, as the very first responsibility listed for the position, that the LOT Specialist will "[c]onduct field oversight of NYCHA personnel and vendors conducting" certain lead-based paint activities. See Defs. Rule 56.1 Statement ¶ 30 (emphasis added); Ex. 1 to Le Decl. The plaintiff disputes the exact proportion of time that he spent in the field before the COVID-19 pandemic, but he does not dispute the fact that he worked in the field pre-pandemic. Indeed, the plaintiff testified at his deposition that, between

19

September 2019 and March 2020, he spent a significant amount of time in the field. See Ex. 16 to Le Decl. at 66, ECF No. 47-16 (testifying that, for the month of September 2019, the plaintiff was in the field every day except for four days); id. at 112 (admitting that he was doing oversight in the field before March 2020). Also, O'Hagan, who was tasked with building the EHS Department and who hired the plaintiff in 2019, testified that the "first responsibility" of the LOT Specialist position was to "provide field oversight," and that his "intention was that this was a field-based position." Ex. 6 to Le Decl. at 31, ECF No. 47-6. The plaintiff's supervisors, Eweka and Blagrove, likewise testified that one of the plaintiff's core responsibilities was to conduct inspections in the field. See Ex. 4 to Le Decl. at 66-67 ("Eweka Dep."), ECF No. 47-4 ("Romel was, when he was hired, his job was in the field. He was there to conduct field inspections, not clerical work in the office."); Ex. 17 to Le Decl. at 49 ("Blagrove Dep."), ECF No. 47-17 ("[T]his was primarily a field position because of the nature of the work. To do the oversight, it requires going out into the field and actually doing direct observation of NYCHA employees and vendors performing lead-based paint reduction activities.").

The plaintiff essentially argues that NYCHA should have removed all field-based functions from his job and given him

exclusively office-based, administrative assignments that he could complete remotely. But this would require eliminating an essential function—conducting field inspections—from the plaintiff's job. Although a reasonable accommodation "may include adjustments to work schedules or other job restructuring, . . . a reasonable accommodation can never involve the elimination of an essential function of a job." McMillan, 711 F.3d at 127; Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991) ("The suggestion that the lifting and handling requirements might be waived for [a Postal Service manual clerk] was not a suggestion for reasonable accommodation since these tasks were essential functions of the job.").

Furthermore, the plaintiff's contention that NYCHA should have created a new, light-duty position for him is without merit. "The ADA lists reassignment to an existing, vacant position as a possible reasonable accommodation, . . . but the ADA does not require creating a new position for a disabled employee." Graves, 457 F.3d at 187; see also Davidson v. LaGrange Fire Dist., 523 F. App'x 838, 839 (2d Cir. 2013) ("Davidson has failed to demonstrate, however, that there were any light-duty positions available for career firefighters, and our case law makes clear that defendants were not required to create a new position to accommodate Davidson."). There is no

21

evidence that there was a light-duty LOT Specialist position
available: all the other LOT Specialists performed fieldwork
four to five days a week before March 2020 and have continued to
work in the field four days a week post-COVID-19. See Decl. of
Samuel Awelewa ("Awelewa Decl.") ¶¶ 6-9, ECF No. 58; Decl. of
Akinola Idowu ¶¶ 5-9, ECF No. 59; Decl. of Chibuzor Nwobodo
¶¶ 5-9, ECF No. 60; Decl. of John Ospina ¶¶ 5-9, ECF No. 61. As
for the plaintiff's suggestion that NYCHA should have promoted
him to LOT Field Supervisor instead of Awelewa, the plaintiff
fails to address the fact that Awelewa continued to work in the
field four days per week even after his promotion to LOT Field
Supervisor. See Awelewa Decl. ¶ 11.

Relatedly, the fact that NYCHA voluntarily modified the
plaintiff's job duties from April 2020 to July 2021 does not
render fieldwork a non-essential function of the plaintiff's
position. That NYCHA temporarily accommodated the plaintiff's
disabilities at the height of the pandemic—by seeking out
administrative tasks for the plaintiff and essentially making
the plaintiff Eweka's "principal assistant," Def. Rule 56.1
Statement ¶ 57—does not mean that NYCHA had an obligation to
continue providing that accommodation to the plaintiff once the
LOT resumed its regular operations. See Trobia v. Henderson, 315
F. Supp. 2d 322, 334 (W.D.N.Y. 2004), aff'd, 143 F. App'x 374

(2d Cir. 2005) ("[T]he fact that Trobia worked in the Box
Section for a period of time, although unable to perform all the
essential functions of that job[,] did not create any vested
rights to continue to do so. The USPS should not be punished for
being more generous to plaintiff by allowing him to remain in a
job that he was unable to perform."); Uhl v. Home Depot U.S.A.,
No. 08-cv-3064, 2010 WL 3282611, at *5 (E.D.N.Y. Aug. 13, 2010)
(concluding that the fact that "Home Depot previously exceeded
its legal obligations" by affording the employee "a more than
reasonable accommodation . . . does not compel Home Depot to
continue to accommodate him beyond what the law requires").

The plaintiff cites Thompson v. State Farm Mutual
Automobile Insurance Company in support, but Thompson is
distinguishable. No. 22-cv-8375, 2024 WL 922820 (S.D.N.Y. Mar.
4, 2024). In Thompson, the court found a genuine issue of fact
as to whether driving was an essential function of Thompson's
job as an appraiser for State Farm estimating the costs of
repairing damaged vehicles. See id. at *1-5 (denying the
defendant's motion for summary judgment on Thompson's disability
discrimination claim and the parties' cross-motions for summary
judgment on Thompson's failure-to-accommodate claim). However,
in that case, "relevant evidence on this question, such as a
written job description or the amount of time appraisers spent

23

driving," was not in the record. Id. at *2. Moreover, Thompson claimed that driving was not an essential function of being an appraiser because other State Farm appraisers did the same job remotely, and the court accordingly concluded that "[a] reasonable juror could . . . find that driving was not essential because the company allowed other appraisers to work remotely." Id. By contrast, in this case, the written job description and documents reflecting the amount of time LOT Specialists spent in the field are in the record, and the other LOT Specialists all worked in the field during the relevant period.

Accordingly, the plaintiff has failed to demonstrate that he could perform the essential functions of his job while working remotely full-time. Therefore, the defendants' motion for summary judgment dismissing the plaintiff's failure-to-accommodate claims under the ADA and the Rehabilitation Act is **granted.**

### b. NYSHRL and NYCHRL

The plaintiff's failure-to-accommodate claims under the NYSHRL and the NYCHRL are also without merit. Unlike the ADA or the Rehabilitation Act, "[t]he NYCHRL places the burden on the employer to demonstrate lack of a safe and reasonable accommodation and to show undue hardship." Lazzari v. N.Y.C. Dep't of Parks & Recreation, 751 F. App'x 100, 102 (2d Cir.

2018). An employer has an affirmative defense if the employee cannot, with reasonable accommodation, "satisfy the essential requisites of the job." N.Y.C. Admin. Code § 8-107(15)(b); see also Williams v. MTA Bus Co., 44 F.4th 115, 137 (2d Cir. 2022) (citing Romanello v. Intesa Sanpaolo, S.p.A., 998 N.E.2d 1050, 1053 (N.Y. 2013)).

In this case, there is no genuine dispute that conducting field inspections is an essential function of the plaintiff's job. As discussed above, any accommodation eliminating fieldwork from the plaintiff's job would not have been a reasonable one. See Lazzari, 751 F. App'x at 103-04 (concluding that "regular attendance was an essential function of a maintenance worker" and that "any purported accommodation predicated on the City's tolerance of [the plaintiff's] excessive absences would have undoubtedly constituted a hardship," even when it was the plaintiff's disability that prevented him from going to work regularly).

In addition, the plaintiff brings a claim under the NYCHRL for failure to "engage in a cooperative dialogue." N.Y.C. Admin. Code § 8-107(28). The term "cooperative dialogue" refers to the process by which the employer and the person who may be entitled to an accommodation "engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential

25

accommodations that may address the person's accommodation
needs, including alternatives to a requested accommodation; and
the difficulties that such potential accommodations may pose"
for the employer. Id. § 8-102.[5] Such a process "may involve
meeting with the employee who requests an accommodation,
requesting information about the condition and what limitations
the employee has, asking the employee what he or she
specifically wants, showing some sign of having considered the
employee's request, and offering and discussing available
alternatives when the request is too burdensome." Elmessaoudi v.
Mark 2 Rest. LLC, No. 14-cv-4560, 2016 WL 4992582, at *8
(S.D.N.Y. Sept. 15, 2016). Although an employer cannot "take a
haphazard approach" to the process, "[t]here is no rule that an
employer has to engage in the process for a certain number of
days or that it ultimately has to give the employee what the

---

[5] The ADA also "envisions an interactive process by which employers and
employees work together to assess whether an employee's disability can be
reasonably accommodated." McBride, 583 F.3d at 99. "That being said, the ADA
imposes liability for, inter alia, discriminatory refusal to undertake a
feasible accommodation, not mere refusal to explore possible accommodations
where, in the end, no accommodation was possible." Id. at 100. Accordingly,
the Second Circuit Court of Appeals has held that "an employer's failure to
engage in a sufficient interactive process does not form the basis of a claim
under the ADA and evidence thereof does not allow a plaintiff to avoid
summary judgment unless [he] also establishes that, at least with the aid of
some identified accommodation, [he] was qualified for the position at issue."
Id. at 101. The "cooperative dialogue" requirement under the NYCHRL is even
more demanding than the "interactive process" standard under the ADA, see
Hosking v. Mem'l Sloan-Kettering Cancer Ctr., 126 N.Y.S.3d 98, 102-03 (App.
Div. 2020), and a failure to engage in a cooperative dialogue is
"independently actionable as a separate claim under the NYCHRL," Greenbaum v.
N.Y.C. Transit Auth., No. 21-1777, 2022 WL 3347893, at *5 (2d Cir. Aug. 15,
2022).

employee is demanding." <u>Hosking v. Mem'l Sloan-Kettering Cancer Ctr.</u>, 126 N.Y.S.3d 98, 104 (App. Div. 2020).

The plaintiff argues that he had no opportunity to rebut Blagrove's "opinion" about his essential functions or to discuss his accommodation request with HR. Pltf. Opp. at 14-15. The plaintiff also complains that HR did not discuss alternative options, such as a reduced field schedule, with him. <u>Id.</u> at 15.

In this case, there is insufficient evidence from which a rational jury could find that the defendants failed to engage in a cooperative dialogue. The record shows that HR considered the plaintiff's accommodation request in good faith, consulting with Blagrove to understand fully the plaintiff's essential job functions, and granted a modified version of the plaintiff's request, permitting the plaintiff to work remotely on days he would otherwise be in the office. <u>See</u> Def. Rule 56.1 Statement ¶ 121. When the plaintiff received HR's decision on his accommodation request, the plaintiff appealed that determination and shared a list of his "reassignment duties" with HR for its review. <u>See</u> Pltf. Rule 56.1 Statement ¶ 267; Ex. 47 to Le Decl., ECF No. 47-47. That NYCHA ultimately disagreed with the plaintiff's description of his essential job functions does not constitute a failure to engage in a cooperative dialogue. The NYCHRL does not require an employer to "give the employee what

27

the employee is demanding." Hosking, 126 N.Y.S.3d at 104; see also Stuart v. T-Mobile USA, Inc., No. 14-cv-4252, 2015 WL 4760184, at *10–11 (S.D.N.Y. Aug. 12, 2015) ("[T]he NYCHRL requires only that Defendants engage in an interactive process with the disabled individual; it does not require that the individual be satisfied with that process or that the process result in the individual's preferred accommodation.").

The plaintiff's contention that NYCHA should have offered him a reduced field schedule, for example by scheduling him for fieldwork three days per week (rather than four), is also without merit. There is no indication that the plaintiff sought this alternative option during his dialogue with NYCHA. In appealing HR's decision to NYCHA, the plaintiff simply restated his request for full-time remote work. See Ex. 47 to Le Decl. For these reasons, the defendants' motion for summary judgment dismissing the plaintiff's failure-to-accommodate claims under the NYSHRL and the NYCHRL is **granted.**

### 2. Discriminatory Treatment

#### a. ADA and Rehabilitation Act

To state a prima facie discriminatory treatment claim under the ADA or the Rehabilitation Act, a plaintiff must show that: "(1) his employer is subject to the [statute]; (2) he was disabled within the meaning of the [statute]; (3) he was

otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Fox v. Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019). The plaintiff must also establish that the disability was the "but-for" cause of the adverse action. Natofsky, 921 F.3d at 341.

The plaintiff has failed to satisfy the third requirement of a prima facie claim for discriminatory treatment. As discussed above, the plaintiff cannot show that he was qualified to perform the essential functions of his job with the requested accommodation—working remotely full-time. Removing fieldwork from the plaintiff's list of responsibilities would not have been a reasonable accommodation because "a reasonable accommodation can never involve the elimination of an essential function of a job." McMillan, 711 F.3d at 127. To the extent that the plaintiff claims that his field responsibilities should have been reduced substantially, NYCHA had no obligation to create a new, light-duty position for the plaintiff, especially when the undisputed evidence demonstrates that all the other LOT Specialists were working in the field four days per week.

Accordingly, the plaintiff's discriminatory treatment claims under the ADA and the Rehabilitation Act are **dismissed.**

29

### b. NYSHRL and NYCHRL

The NYCHRL and post-amendment NYSHRL are less demanding of plaintiffs than the ADA or the Rehabilitation Act for discriminatory treatment claims. For example, to establish a prima facie claim of discrimination under the NYCHRL, "a plaintiff is not required to show an adverse employment action and need only show differential treatment—that he was treated 'less well'—because of a discriminatory intent." Livingston, 563 F. Supp. 3d at 234 (quoting Mihalik, 715 F.3d at 110). "[T]o make such a showing, a plaintiff need only demonstrate that discrimination was one of the motivating factors for the defendant's conduct, not that discrimination was the but-for cause of the plaintiff's differential treatment." Forrester v. Corizon Health, Inc., 278 F. Supp. 3d 618, 626 (E.D.N.Y. 2017).

In this case, as with his claims under the ADA and the Rehabilitation Act, the plaintiff has not established a prima facie case of discriminatory treatment under state or municipal law. The plaintiff has failed to put forth evidence that he was treated "less well" because of his disability. Both pre- and post-pandemic, all of the other LOT Specialists were assigned to the field four days per week. The defendants did not single out the plaintiff by scheduling him for fieldwork beginning in July 2021, when NYCHA was returning to normal operations. In fact,

the plaintiff does not dispute that the other LOT Specialists
resumed some lead oversight activities in the field as early as
August 2020, while the plaintiff continued to work remotely.
Defs. Rule 56.1 Statement ¶¶ 53, 128. Summary judgment is
therefore **granted** as to the plaintiff's discriminatory treatment
claims under the NYSHRL and the NYCHRL.

### C. Retaliation Claims

The defendants next move for summary judgment on the
plaintiff's claim for retaliation under the relevant federal,
state, and municipal statutes. The plaintiff alleges that the
defendants retaliated against him by: assigning him field duties
beginning in July 2021; failing to provide him with an advance
weekly schedule; and selecting Awelewa (instead of the
plaintiff) to provide coverage during Eweka's vacation.

### 1. ADA and Rehabilitation Act

To establish a prima facie case of retaliation under the
ADA and the Rehabilitation Act, the plaintiff must show that (1)
he participated in a protected activity, (2) the employer was
aware of that activity, (3) the employer took an adverse
employment action against the plaintiff, and (4) there was a
"causal connection" between the protected activity and the
adverse employment action. Treglia v. Town of Manlius, 313 F.3d
713, 719 (2d Cir. 2002). The retaliation provision found in

31

Title VII of the Civil Rights Act of 1964 is "substantially similar" to the provision found in the ADA, and courts "apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA [and the Rehabilitation Act]." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

In the context of retaliation claims, adverse employment actions include any actions that "could well have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019). To prove a causal connection, a plaintiff must show that "but for" the protected activity, the adverse action would not have been taken. See Tafolla v. Heilig, 80 F.4th 111, 125 (2d Cir. 2023). Causation may be shown either through direct evidence of retaliatory animus or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Id.

The defendants do not dispute that the plaintiff participated in a protected activity in April 2020, when he submitted his medical note to his supervisors, and in May 2021, when he submitted an accommodation request to HR, or that NYCHA was aware of that activity. Rather, the defendants argue that

32

the plaintiff has failed to raise a genuine dispute that the
defendants took any adverse employment action against him.

As a matter of law, none of the actions alleged by the
plaintiff rises to the level of an actionable retaliatory
action. For example, HR's denial of the plaintiff's
accommodation request in July 2021 and the field assignments
that followed (implementing HR's decision) do not constitute
adverse employment actions. See Perez v. N.Y. Presbyterian/Weill
Cornell Med. Ctr., No. 23-cv-6152, 2024 WL 1514216, at *9
(S.D.N.Y. Apr. 8, 2024) (holding that the employer's denial of
the employee's accommodation request was not an adverse action);
Missick v. City of New York, 707 F. Supp. 2d 336, 356-57
(E.D.N.Y. 2010) (concluding that the defendants' alleged failure
to accommodate the plaintiff's disability following a protected
accommodation request "cannot be bootstrapped into a viable
disability retaliation claim").

Also, Eweka's alleged failure to give the plaintiff an
advance weekly schedule, rather than a daily assignment email,
for a few months is "objectively too trivial to dissuade a
reasonable worker from making or supporting a discrimination
complaint." Paul v. Postgraduate Ctr. for Mental Health, 97 F.
Supp. 3d 141, 196 (E.D.N.Y. 2015); see also Hicks v. Rubin, 6 F.
App'x 70, 74 (2d Cir. 2001) (finding that the short notice that

33

the plaintiff's supervisor allegedly provided to the plaintiff before performing a workload review did not amount to an adverse employment action). Moreover, it is undisputed that Eweka sent daily assignment emails to all LOT Specialists at the same time, and therefore all the LOT Specialists—not just the plaintiff—learned of their schedule for the day at the same time and in the same way. Def. Rule 56.1 Statement ¶ 184.

Similarly, the plaintiff's complaint that Awelewa, and not the plaintiff, was selected to provide coverage for Eweka during Eweka's week-long vacation in July 2021 is not actionable. The plaintiff claims that he had previously covered for Eweka and that the plaintiff was passed over for coverage opportunities only after he engaged in protected activity. But the examples provided by the plaintiff indicate that the plaintiff had covered for Eweka only when Eweka was absent for brief periods of time, not exceeding one day, and not during an extended period of absence (such as a week-long vacation). See Pltf. Rule 56.1 Statement ¶¶ 186, 286 (showing that the plaintiff covered for Eweka on two occasions: when Eweka was at an all-day training on December 15, 2020, and when Eweka was taking personal time the morning of December 16, 2020). And the defendant presents undisputed evidence that the decision to have Awelewa cover for Eweka was part of EHS leadership's pre-

34

existing conversations regarding professional development opportunities for Awelewa, who stood out among his peers as a potential leader. See Def. Rule 56.1 Statement ¶ 188.

To the extent that the plaintiff takes issue with the defendants' decision to promote Awelewa to LOT Field Supervisor instead of the plaintiff, no rational jury could find that there was a causal connection between the plaintiff's protected activity and the defendants' promotion decision. To start, the plaintiff offers no direct evidence of retaliatory animus in connection with the decision to promote Awelewa. While a plaintiff "can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action," Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010), the temporal proximity must be "very close," Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). Courts have found that one year was "too long a period of time for a jury to be able to infer a causal connection," Natofsky, 921 F.3d at 353, and that "[s]ix months between protected activity and [adverse employment action] is well beyond the time frame for inferring retaliatory causation," Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005). In this case, the plaintiff last engaged in

protected activity in May 2021, and Awelewa was not promoted to
LOT Field Supervisor until March 2022, almost ten months later.
Moreover, there is no evidence that the plaintiff was more
qualified than Awelewa for the LOT Field Supervisor position.
See Def. Rule 56.1 Statement ¶¶ 188-90 (reflecting Blagrove's
testimony that EHS was already having conversations about
Awelewa's professional growth and that Awelewa appeared to have
a "better rapport" with his peers).

Accordingly, the defendants' motion for summary judgment as
to the plaintiff's retaliation claims under the ADA and the
Rehabilitation Act is **granted.**

### 2. NYSHRL and NYCHRL

For retaliation claims brought pursuant to the NYCHRL and
the post-amendment NYSHRL, a plaintiff need only prove that the
plaintiff "took an action opposing [the] discrimination, and
that, as a result, the employer engaged in conduct that was
reasonably likely to deter a person from engaging in such
action." Livingston, 563 F. Supp. 3d at 246 (quoting Mihalik,
715 F.3d at 112). However, the plaintiff still must establish a
"causal link"—"that there was a causal connection between [the
plaintiff's] protected activity and the employer's subsequent
action," and that the defendant's "legitimate reason for [the

employer's action] was pretextual or motivated at least in part by an impermissible motive." Mercado, 2023 WL 5975322, at *16.

For substantially the same reasons as stated above with respect to the plaintiff's retaliation claims under federal law, the plaintiff has failed to show that the defendants "engaged in conduct that was reasonably likely to deter a person from engaging in such action," Livingston, 563 F. Supp. 3d at 246, or that there was a causal connection between the plaintiff's protected activity and the defendants' conduct. The record contains ample evidence of the non-retaliatory reasons for the actions taken—Eweka sent daily schedules to all the LOT Specialists as a matter of course, and Awelewa was selected to provide coverage for Eweka during Eweka's extended absence as part of a broader professional development plan—and the plaintiff offers no evidence to show that these legitimate reasons were pretextual.

For these reasons, summary judgment for the defendants on the plaintiff's NYCHRL and NYSHRL retaliation claims is **granted.**

### D. Hostile Work Environment Claims

The Complaint raises hostile work environment claims pursuant to the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. The defendant moves for summary judgment dismissing these claims. The plaintiff has failed to address the

defendant's arguments regarding these claims, and therefore the plaintiff has abandoned these claims. See, e.g., Douglas v. Victor Cap. Grp., 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (deeming the plaintiff's claims for retaliation and breach of contract abandoned where the plaintiff's papers in opposition to the defendants' summary judgment motion addressed none of those claims).

### E. Aiding and Abetting Claims

The plaintiff's claims against the individual defendants for aiding and abetting discriminatory practices, brought pursuant to the NYSHRL and the NYCHRL, must also be dismissed. Under the NYSHRL, it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. L. § 296(6). Individual liability exists under the NYCHRL according to similar standards. See N.Y.C. Admin. Code § 8-107(6); Bliss v. MXK Rest. Corp., 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016). The plaintiff's claims of aiding and abetting liability are not viable because there was no underlying discriminatory conduct. "[A]iding and abetting is only a viable theory where an underlying violation has taken place." Falchenberg v. N.Y. State Dep't of Educ., 338 F. App'x 11, 14 (2d Cir. 2009); see also Stryker v. HSBC Secs. (USA), No. 16-cv-9424, 2020 WL 5127461, at

*17 (S.D.N.Y. Aug. 31, 2020) ("Where no violation of the Human Rights Law by another party has been established[,] an individual employee cannot be held liable for aiding or abetting such a violation.").

### F. FMLA Interference Claim

Finally, the defendants seek summary judgment on the plaintiff's FMLA interference claim, arguing that NYCHA did not deny or otherwise interfere with benefits to which the plaintiff was entitled under the FMLA. The defendants contend that, even if there was an administrative delay of around two weeks in HR's processing and approval of the plaintiff's FMLA request, the plaintiff was not prejudiced by the delay because his leave request was ultimately approved, and he took the full twelve weeks of FMLA leave to which he was entitled.

The FMLA provides that an eligible employee suffering from a serious health condition is entitled to twelve workweeks of leave during any twelve-month period. See 29 U.S.C. § 2612(a)(1)(D), (c). It is unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise[] any right" provided under the FMLA. Id. § 2615(a)(1).

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered

with a benefit to which []he was entitled under the FMLA."
Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir.
2016). The elements of a prima facie case of interference with
FMLA rights are: (1) that the plaintiff is an eligible employee
under the FMLA; (2) that the defendant is an employer as defined
by the FMLA; (3) that the plaintiff was entitled to take leave
under the FMLA; and (4) that the plaintiff gave notice to the
defendant of the plaintiff's intention to take leave; and (5)
that the defendant denied or otherwise interfered with benefits
to which the plaintiff was entitled under the FMLA. Id.

The dispute in this case centers on the fifth element:
whether the defendants in some manner impeded the plaintiff's
exercise of his rights under the FMLA. The plaintiff alleges
that he was "forced to work during the FMLA leave period." Pltf.
Opp. at 22.[6] The plaintiff submitted his FMLA request on
September 13, 2021, but HR appears to have misplaced his

---

[6] The plaintiff also argues, and the defendants do not dispute, that the DOL
advised the plaintiff that NYCHA had committed three FMLA violations against
the plaintiff: (1) failure to provide Eligibility Notice; (2) failure to
provide Rights & Responsibilities Notice; and (3) failure to provide
Designation Notice. See Pltf. Rule 56.1 Statement ¶ 306; see also Pltf. Opp.
at 22. However, the Second Circuit Court of Appeals has rejected the
contention that the "right to notice stands as an independent right under the
FMLA, and that an employee may sue the employer for failure to give notice
even if that failure in no way affected the employee's leave, benefits, or
reinstatement." Sarno, 183 F.3d at 161–62. Accordingly, with respect to the
plaintiff's FMLA interference claim, it is appropriate to focus on the
plaintiff's argument that the defendants forced the plaintiff to work during
his supposed FMLA leave period, rather than on the notice violations found by
the DOL.

paperwork initially. Pltf. Rule 56.1 Statement ¶¶ 295–98. On
September 23, Eweka tried to assign the plaintiff work, though
at that point the plaintiff had not worked in two weeks in view
of his pending FMLA leave request. Id. ¶ 297. The plaintiff's
union representative advised the plaintiff to comply with
Eweka's office-based remote work requests while the plaintiff's
FMLA request was pending, and on September 24, the plaintiff
attended a work meeting at Eweka's request. Id. ¶ 299; Ex. DD to
Decl. of Bryan D. Glass ("Glass Decl."), ECF No. 53-30. It was
not until September 27—two weeks after the plaintiff initially
submitted his FMLA request to HR—that the plaintiff's FMLA leave
status was clarified and his request approved. Id. ¶ 301.

In some circumstances, a plaintiff may establish an FMLA
interference claim by showing that the employer "forc[ed] a
plaintiff to work from home during the FMLA leave period."
Crosby v. Stew Leonard's Yonkers LLC, 695 F. Supp. 3d 551, 576
(S.D.N.Y. 2023). The defendants contend that the plaintiff was
not "forced" to work, but instead voluntarily chose to follow
his union representative's advice. See Defs. Reply at 10, ECF
No. 55. This argument misses the mark. Although the plaintiff's
union representative advised the plaintiff to work while the
plaintiff's FMLA request status was being clarified, HR's
initial mishandling of the plaintiff's FMLA request is what

created the need for the plaintiff to seek this advice from his union representative in the first place. In short, HR's delay in processing and approving the plaintiff's FMLA request denied the plaintiff "the ability to understand his rights and benefits under the FMLA and thereby frustrat[ed] his efforts to exercise those rights," at least between September 13 and September 27, 2021. Ridgeway v. Royal Bank of Scotland Grp., No. 11-cv-976, 2012 WL 1033532, at *9 (D. Conn. Mar. 27, 2012). The fact that the plaintiff eventually was able to take his full twelve weeks of FMLA leave does not mean that no reasonable jury could find that the defendants interfered with the plaintiff's FMLA rights between September 13 and September 27, 2021.[7] See Ejiogu v. Grand Manor Nursing & Rehab. Ctr., No. 15-cv-505, 2017 WL 1184278, at *7 (S.D.N.Y. Mar. 29, 2017) ("That [the plaintiff] ultimately received a favorable leave arrangement due to a second, unrelated FMLA request does not entitle the defendants to summary judgment on the claim that the defendants interfered

---

[7] The parties represented at oral argument that the plaintiff's FMLA leave was approved retroactively to begin on September 13, 2021. But the evidence in the record and the plaintiff's written submissions indicate that the plaintiff's FMLA leave was not granted retroactively. See Ex. FF to Glass Decl., ECF No. 53-32 (reflecting that the plaintiff was approved for FMLA leave from September 28, 2021, through March 25, 2022); Pltf. Opp. at 23 (arguing that "Plaintiff was not approved for FMLA leave retroactive to September 13, 2021 (i.e. when he applied for FMLA) since his FMLA leave started on September 28, 2021").

with [the plaintiff's] FMLA rights [in connection with the plaintiff's first request].").[8]

Accordingly, the defendant's motion for summary judgment on the plaintiff's FMLA interference claim is **denied.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion for summary judgment is **granted in part** and **denied in part.** The Clerk is respectfully directed to close ECF No. 44.

SO ORDERED.

Dated:     New York, New York
           February 24, 2025

                              John G. Koeltl
                        United States District Judge

---

[8] However, the plaintiff's ultimate receipt of the full twelve weeks of FMLA leave "may affect what damages, if any, [the plaintiff] is entitled to if [he] prevails on this claim at trial." Ejiogu, 2017 WL 1184278, at *7 n.14. An employer who violates 29 U.S.C. § 2615 is liable to an employee for damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," as well as any "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(1)(A)-(B). As the Supreme Court has explained, section 2617 "provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost by reason of the violation, . . . for other monetary losses sustained as a direct result of the violation, . . . and for appropriate equitable relief." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002).